**Douglas Ray SOCKWELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 41175.**

Court of Criminal Appeals of Texas.

April 10, 1968.

Rehearing Denied May 29, 1968.

Second Rehearing Denied July 17, 1968.

Jack L. Beezley, Dallas, for appellant.

Henry Wade, Dist. Atty., Arch Pardue, Tom Reese, Ronald W. Chapman, William S. Mason, Jr., and Kerry P. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The offense is murder without malice, under Art. 802c Vernon's Ann.P.C.; the punishment, three years and six months.

Ground of error No. 1 is "The court erred in refusing to instruct the jury that 'If you believe from the evidence in this case that the intoxication of the defendant was not the cause of death, then you will acquit defendant of murder without malice.', or to give an instruction to the jury of similar import, and thereby denied appellant a trial by jury guaranteed by the U.S. and state constitutions and the laws of the state of Texas on his defense of no causal connection."

The record reflects that the trial of this cause began on February 1, 1967, the charge was submitted to the jury on February 2, 1967, and the jury's verdict was returned and accepted by the court on February 3, 1967. The appellant admits in his brief that his objections to the court's charge and his requested charge were not in writing and filed prior to the reading of the charge to the jury, and he relied upon an agreement with the state that the matters

dictated to the court reporter would be considered as written up and filed before the charge was read to the jury. The objections to the charge and the requested charge were later written up at a date not shown, and were then signed by appellant's attorney and the judge, and were back-filed to February 3, 1967, the day after the charge was read to the jury.

In considering a similar ground of error in Seefurth v. State, 422 S.W.2d 931, this court held:

"In his supplemental appellate brief appellant points out '[t]he truth of the matter is that the Trial Court told the Trial Counsel for the Appellant at the time, that he could make his objections to the Court's Charge at a later time. This was done by way of the formal Bills of Exception.'

"If the trial judge took the action claimed, he was without authority to permit such procedure. Cf. Gonzalez v. State, 164 Tex.Cr.R. 64, 297 S.W.2d 144; Ortiz v. State, 121 Tex.Cr.R. 438, 53 S.W.2d 58. By failing to comply with the requirements of Articles 36.14 and 36.15, supra, at the trial itself appellant waived his right to have his objections and special requested charges considered. Scott v. State, 106 Tex.Cr.R. 376, 292 S.W. 891; Lopez v. State, 112 Tex.Cr.R. 517, 17 S.W.2d 807; Hanvy v. State, 144 Tex.Cr.R. 351, 162 S.W.2d 721; Arrisola v. State, 171 Tex.Cr.R. 369, 350 S.W.2d 551.

"These articles are ones the Legislature had a right to enact, and are statutes which the Courts can neither ignore or emasculate. See Vinson v. State, 77 Tex.Cr.R. 546, 179 S.W. 574.

"These articles are mandatory and there must be strict compliance with their provisions. See Templeton v. State, 152 Tex.Cr.R. 121, 210 S.W.2d 168; Cedillo v. State, 165 Tex.Cr.R. 371, 307 S.W.2d 267; Hays v. State, 129 Tex.Cr.R. 156, 84 S.W.2d 1008.

"The strickness of the interpretation to be given to such statutes is demonstrated by our recent decision in Smith v. State, 415 S.W.2d 206, where we held that the requirements of Articles 36.14 and 36.15, supra, would control over the provisions of Article 40.09, Sec. 4, V.A.C.C.P., giving effect to a transcription of the court reporter's notes which are certified and included in the record on appeal.

"The real purpose of the enactment of these articles was to enable the trial judge to know in what respect the defendant regards the charge as defective and to afford him an opportunity to correct it before reading the charge to the jury. See Spadachene v. State, 137 Tex.Cr.R. 26, 127 S.W.2d 466; Brown v. State, 140 Tex.Cr.R. 133, 143 S.W.2d 775; Garrison v. State, 143 Tex.Cr.R. 403, 158 S.W.2d 815; Green v. State, 144 Tex.Cr.R. 186, 161 S.W.2d 114."

The disposition in Seefurth is applicable to and controls the disposition of ground of error No. 1. Said ground is overruled.

In ground of error No. 2, it is contended that "The trial court erred in refusing defendant's motion for an instructed verdict of not guilty for the reason that the state failed to establish a causal connection between the intoxication of defendant and the death of decedent."

The evidence reveals that five persons were travelling on a public highway in a Plymouth automobile about 1:30 a.m., August 7, 1965, when the motor ceased to operate, and while awaiting help, Mr. and Mrs. Hawthorn sat in the car, Fay Hawthorn sat on the trunk with her legs down the trunk, Garland Hawthorn (the deceased) stood at the rear, facing the car, and Frank King stood near the driver's side of the car; that the highway was well lighted at the time and place and approaching traffic could be clearly seen; that a large truck approached from the rear in the same lane in which a portion of the Hawthorn car was situated, and after King motioned, it moved

into another lane and continued on the highway. King testified that he saw a car "about fifty to seventy-five feet" away which he then motioned over and turned and looked in another direction, and in "a few seconds" the car (appellant's) struck the Hawthorn car from behind. As a result of the collision Fay lost both of her legs and suffered a miscarriage, and Garland Hawthorn was crushed and mangled in the impact which resulted in his death in a brief time. The two cars travelled about ninety-nine feet from the point of impact to where the Hawthorn car hit the back of a ditch. The view was clear and unobstructed along the highway before arriving at the point of impact; and there were no skid marks on this portion of the highway. An accident investigator testified that it would take about two seconds for a car to travel 150 fee at a speed of between 55 and 60 miles per hour, which was the speed the appellant said he was travelling. Officers Hancock, Flowers, and Brown who arrived at the scene shortly after the collision testified that the appellant was then intoxicated. A chemical analysis of a specimen of appellant's blood taken at the hospital showed an alcoholic content of 0.211 per cent, and testimony was offered that such content was indicative of intoxication.

Testifying in his own behalf, the appellant stated that he was driving the car that collided with the Hawthorn car, but that he was not intoxicated even though he had drunk five to seven beers before 10 p.m. on the night in question; that he never saw the Hawthorn car before the collision and did not know what caused him not to see it after the truck changed lanes which was just a few seconds before he heard the collision.

It is concluded that the jury was authorized to find that had the appellant been sober he could have avoided striking the deceased, Garland Andrew Hawthorn.

 Ground No. 3 is that "The court erred in admitting evidence that the defendant consented to the removal from his body of a blood sample and in admitting the results of a test performed on that blood sample to determine alcohol quantity contained therein because the consent to the test was illegally and unconstitutionally obtained."

The testimony of the state reflects that the appellant voluntarily consented to the taking of a blood test and gave a specimen of his blood for analysis. While testifying in his own behalf, the appellant testified:

"Q You consented to this blood test, did you understand that you didn't have to?

"A Yes, sir."

The obtaining of a blood specimen from an accused with his consent does not violate his constitutional rights. Ground of error No. 3 is overruled. Hearn v. State, Tex. Cr.App., 411 S.W.2d 543.

The judgment is affirmed.

## OPINION ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

 Appellant's contention is that Articles 36.14 and 36.15, Vernon's Ann.C.C.P., as applied in his case are unconstitutional, because he had an agreement with the State that his objections to the charge, though orally made, might be considered as having been properly made in writing. We are not here concerned or bound by any agreement which may have been made by the prosecutor during the course of the trial. We are here called upon to pass on the question of whether the statutes mentioned as construed by this Court constitute a deprivation of due process. There is no contention that this Court has given consideration to similar contentions raised in other cases. It is apparent from the cases set forth in the original opinion that there has been no discrimination against this appellant. This is merely a rule of procedure enacted by the Legislature which applies to all who appeal their convictions.

The United States Court of Appeals for the Ninth Circuit in Berg v. Cranor, 209 F.2d 567, said, "Hence his (appellant's

counsel's) mistake (in not filing a statement of facts in time) is not one of the State of Washington and does not constitute a violation of the Fourteenth Amendment * * *."

The United States Court of Appeals for the First Circuit in Coggins v. O'Brien, 188 F.2d 130, said: "The Commonwealth of Massachusetts is free to regulate the procedure of its courts in accordance with its own conception of policy and fairness, unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."

In United States ex rel. Marelia v. Burke, 101 F.Supp. 615, cert. den. 344 U.S. 868, 73 S.Ct. 110, 97 L.Ed. 673, the United States District Court, E.D. Pennsylvania said: "The procedure afforded by the law of Pennsylvania gives to defendants a right of appellate review of actions prejudicial to their interests. That procedure assures them full opportunity to be heard before courts of competent jurisdiction and according to established modes of procedure. * * * While the Federal Courts should have no hesitancy in granting relief in cases where defendants have been over-reached or have been convicted in trials devoid of the essential elements of fairness, nevertheless, they should hesitate to interfere with fair and reasonable procedural requirements under State law."

The remaining contentions presented in the motion for rehearing have been considered and are found to be without merit.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.

CONCURRING OPINION

WOODLEY, Presiding Judge.

I concur in overruling appellant's motion for rehearing for the reason that the record does not support his contention that he acted and relied upon an agreement with the district attorney, approved by the court, in fraud of his rights, that the question of the objections to the court's charge not being in writing, as required by Arts. 36.14 and 36.15 V.A.C.C.P., would not be raised.