## J. B. COOK V. THE STATE.

No. 23809. Delivered April 14, 1948.
Rehearing Denied May 26, 1948.

*E. T. Miller, of Amarillo,* and *H. M. Hood,* of Borger, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for murder with malice; punishment assessed at five years in the penitentiary.

The record reflects that appellant was an oil well driller and worked from 4 p. m. until midnight; that on the night in question he returned to the town of Borger about 1:00 a. m. After parking his automobile, he went to Room 18 in the Metropolitan Hotel where a poker game was in progress and joined the players in the game. At about 5:00 a. m. he was approximately $50.00 loser, and decided to abandon the game and go home. After he had departed, the door to the room was left ajar so that a person could see into the hallway. Terry, who was seated in a position to look through the small opening, noticed a man in the hallway with a paper bag over his head and a gun in his hand. Terry immediately closed the door which was equipped with a Yale lock and could not be opened from the hallway without a key. He informed his companions of what he had seen and remarked, "You don't know how near we came to getting highjacked." However, they did not become alarmed, and continued their game. About twenty minutes later they heard a noise at the south window and then the report of a gun and saw Orval Watson, one of the players, fall to the floor with a bullet wound in the temple, from the effects of which he died immediately. Sometime before noon of that day appellant was arrested, at which time he made a written confession, after being duly warned, in which he informed the officers where he had hidden the gun with which he killed Watson. As a result of the information given the officers they found the gun.

On the trial appellant testified that he engaged in the poker game on the night in question; that after he had lost about $50.00 he started home, when he conceived the idea of playing a practical joke on those still engaged in the game. He went to his automobile, put on a pair of blue overalls, got a .22 caliber rifle and a paper bag out of his car, slipped the bag over his head, went into the hallway of the hotel near the room in question with the purpose of scaring the parties engaged in the game. Someone saw him and closed the door; that he than removed the paper bag from his head, went to a window of the room, cut the screen and attempted to kick the window out, but

his foot slipped and the gun barrel went through the window, breaking the glass, and the gun was at the same time accidently discharged. He left immediately, went to his home without making any investigation or inquiry as to whether or not anyone was hurt, and hid his gun.

Appellant addressed a number of objections to the court's charge. He also brings forward a bill of exception in which he complains of certain remarks by the district attorney in his closing argument to the jury. These complaints will be discussed and disposed of in the order in which they are presented.

Appellant objected to paragraphs 1, 2, 3, 4, 5, 6, 7 and 8 of the court's charge on the ground that the issue of murder with malice, either express or implied, was not raised by the evidence. We find ourselves unable to agree with him. The evidence shows that he disguised himself, put on blue overalls, and with a gun went into the hallway. For what purpose? He said that he intended to scare his friends who were still engaged in the game. This raised an issue of fact for the jury's determination. They had a right to disbelieve any part or all of his testimony. We think the facts and circumstances testified to by the State's witness, as well as his own testimony admitting that he had disguised himself and possessed himself of a gun would support the conclusion that he intended to highjack the parties engaged in the game.

His next complaint relates to paragraphs 9 and 10 of the court's charge, wherein the court instructed the jury as follows:

"Our law provides that one intending to commit a felony and who in the act of preparing for or executing the same shall through mistake or accident do another act which, if voluntarily done, would be a felony, shall receive the punishment affixed to the felony actually committed."

"In this connection, you are further instructed that if you believe beyond a reasonable doubt from the evidence introduced on the trial of this case that the defendant, J. B. Cook, did in the County of Hutchinson and State of Texas, on or about the 12th day of December, 1946, kill Orval Watson by shooting him with a gun through a mistake or accident while intending to commit the offense of robbery, or while in the act of preparing for or executing the offense of robbery, you shall find the defendant guilty of the offense of murder, with malice."

Appellant objected to the charge quoted on the ground that

there was no evidence introduced by the State or defendant which showed that he intended to commit the offense of robbery or was in the act of preparing or was executing the offense of robbery; that it is prejudicial in that it assumes a state of facts that do not exist and various other objections were made not necessary to state here. We are not in accord with appellant's contention because the facts and circumstances proved on the trial are such that a jury would be justified in concluding that he intended to commit the offense of robbery, and was in the act of so doing. The jury was not required to believe his explanation that his purpose in disguising himself and going with a gun to the premises was to scare the poker players.

Appellant next complains of paragraph 11 of the court's charge wherein the court instructed the jury that if they found and believed from the evidence that the defendant, J. B. Cook, in Hutchinson County, and State of Texas, on or about the 12th day of December, 1946, with a gun, did shoot and kill Orval Watson by accident, and not while intending to commit the offense of robbery, to acquit him and say by your verdict, "Not guilty."

Appellant objected to that part of said paragraph which reads as follows: "and not while intending to commit the offense of robbery, or not while in the act of preparing for or executing the offense of robbery." His objection thereto is (a) that it is a comment on the weight of the evidence, (b) it restricts defendant's rights with reference to an affirmative charge on accidental killing, (c) that it is an undue emphasis on the State's theory of the case and prejudicial, (d) that it does not make an application of the law to the facts as testified to by himself, etc.

If the court had responded to the objections and omitted from paragraph 11 of his charge the things particularly pointed out in appellant's exceptions, it would have amounted to telling the jury to acquit appellant if he shot deceased by accident, regardless of a belief and finding on the jury's part that appellant was at the time in the act of committing the offense of robbery. Such an instruction would have entirely ignored Art. 42 P. C. and its application under the issues raised by the evidence. There is no merit in the complaint that there was not sufficient application of the law to the facts.

Appellant complains because the trial court did not charge on negligent homicide. No special instruction upon the subject was requested but appellant rested his complaint upon objection

to the charge of the court for omission therefrom of such instruction.

To constitute the offense of negligent homicide of either the first or second degree there must be an apparent danger of causing the death of the person killed or some other person by the act of accused. (Art. 1232 P. C.) Appellant testified that he was playing a joke on the parties by pretending to rob them, and went to the window of the room in which they were playing cards, cut the screen over the window with a knife, and followed this by an effort to kick the window in, and was in the act of doing so when his foot slipped and the gun barrel broke the window and was discharged accidentally killing Watson. When appellant cut the screen with a knife there was no apparent danger of killing any one in the room by that act. When appellant attempted to kick the window in, there was in that act no apparent danger of killing any one in the room. Those two things were the only voluntary acts of appellant, and neither involved apparent danger to any one. Falling against the window with the gun was an involuntary act according to appellan't story resulting from the accidental slipping of appellant's foot. The evidence failing to raise any issue of apparent danger from any voluntary act of appellant the issue of negligent homicide was not raised, and the court properly omitted any instruction thereon. The rights of appellant were fully protected when the court instructed the jury to acquit him if he shot Watson by accident unless he was in the act of committing the offense of robbery, or in preparation therefor.

Complaint is also made because the court did not tell the jury that if appellant was merely playing a prank on the group of card players intending only to scare them, and his gun was accidently discharged and killed Watson to acquit appellant. In charging on this phase of the case the court authorized an acquittal unless the jury found that appellant was preparing at such time to commit robbery. All avenues for acquittal were thus left open unless a robbery was being committed or preparation to commit it was in progress.

Bill of exception number two relates to the argument of the district attorney wherein he made the statement to the jury that: * * *

"Not one of those men (referring to appellant's character witnesses) knew anything about the activities of this Defendant on the morning of December 12th when he took the wife and

children of Orville Watson the husband and father that they were entitled to have." This argument was objected to because there was nothing in the record to justify such remarks, and such were prejudicial and inflammatory, and in violation of the defendant's rights. The trial court qualifies this bill by showing therein that appellant's attorneys:

"* * * both in their arguments to the jury at some two or three different times made reference to the tragedy and hardship which would result to the wife, and children of the Defendant if the Jury found him guilty and assessed a penitentiary sentence against him. Such argument on their part invited the reply argument on the part of States Counsel, the Honorable W. L. McConnell, District Attorney, in his closing argument wherein he made reference to the tragedy that had befallen the wife, the mother, the father, the brother and the children of Orville Watson, the deceased, when the defendant took from them the life of Orville Watson, the deceased."

The further matter is presented to us by appellant's attorneys that although they did make reference to appellant's family, there was testimony establishing the existence of such family, but that the record is silent as to whether the deceased had any family and that, therefore, the district attorney was out of the record when he argued the effect of this tragedy upon the wife, children, father, mother and brother of the deceased. We do not find any mention in the record concerning any relatives of the deceased. However, we see no reason to think that such argument, invited as it seems to have been, could have inflamed the minds of the jury in a case of this kind. The court's qualification shows that the argument was in reply to and invited by the argument of appellant's counsel. Having accepted the bill as thus qualified appellant is bound thereby. In the light of the qualification we do not think the argument presents reversible error.

The judgment is affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

In his motion for rehearing appellant insists that the argument of the district attorney was not invited by the argument of appellant's attorneys. A reversal of the case is again insisted upon, principally on account of the bill complaining of such argument.

We have carefully reviewed the record and have concluded that this was sufficiently discussed in the original opinion.

Appellant's motion for rehearing is overruled.